IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| PEGGY S. SINK, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 3:03-CV-0727-P |
| v. | § | |
| | § | |
| COMMISSIONER OF SOCIAL SECURITY, | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and an Order of the Court in implementation thereof, subject cause has been referred to the United States Magistrate Judge. Before this Court are Plaintiff's *Motion for Summary Judgment*, filed July 14, 2003, Defendant's *Motion for Summary Judgment* and *Defendant's Memorandum in Support of Motion for Summary Judgment and in Response to Plaintiff's Motion for Summary Judgment*, filed September 12, 2003, and *Plaintiff's Reply to Memorandum of Defendant*, filed October 14, 2003. Having reviewed the evidence of the parties in connection with the pleadings, the undersigned recommends that the decision of the Commissioner be **REVERSED** and the case be **REMANDED** for reconsideration.

I. BACKGROUND[1]

*A.    Procedural History*

Peggy S. Sink ("Plaintiff") seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner") denying her claim for disability benefits under Titles II and XVI

---

[1] The following background comes from the transcript of the administrative proceedings, which is designated as "Tr."

of the Social Security Act. On December 14, 2000, Plaintiff filed applications for disability benefits under Title II and for Supplemental Security Income disability benefits under Title XVI of the Social Security Act. (Tr. at 107-10.) Plaintiff claimed she was disabled due to bipolar disorder and knee problems. (Tr. at 112.) Plaintiff's application was denied initially and upon reconsideration. (Tr. at 86-87, 90-93). Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. at 94.) A hearing, at which Plaintiff personally appeared and testified, was held on September 27, 2002. (Tr. at 35-83). On October 24, 2002, the ALJ issued his decision finding Plaintiff not disabled. (Tr. at 16-24.) The Appeals Council denied Plaintiff's request for review, concluding that the contentions raised in Plaintiff's request for review did not provide a basis for changing the ALJ's decision. (Tr. at 3-4.) Plaintiff then brought this timely appeal to the United States District Court pursuant to 42 U.S.C. § 405(g).

*B.    Factual History*

1.    Age, Education, and Work Experience

Plaintiff was born on June 23, 1947. (Tr. at 26.) She completed seventh grade and took some courses to be a certified nurse assistant ("CNA"). (Tr. at 38, 118.) Her past relevant work experience includes employment as a counter attendant and hotel cleaner. (Tr. at 71.)

2.    Medical Evidence[2]

Plaintiff presented to the Huguley Memorial Medical Center emergency room on January 27, 2000, complaining of suicidal ideation and seeking treatment for substance abuse. (Tr. at 163.) Plaintiff reported receiving treatment for bipolar disorder but discontinuing the Tegretol two months before, when her supply ran out. (Tr. at 160.) A mental status examination revealed depressed

---

[2]Because Plaintiff's contentions relate only to the Commissioner's evaluation of her mental impairment, the Court will limit its recitation of the medical evidence to the evidence which pertains to that impairment.

mood and constricted affect. (Tr. at 161.) Plaintiff was admitted to the hospital and restarted on Tegretol. (Tr. at 162.) She was diagnosed as suffering from bipolar disorder with depressed mood, amphetamine dependence, alcohol abuse, cocaine abuse, and cannabis abuse. (Tr. at 156.) Plaintiff reported she had held "plenty" of jobs in the previous five years but could not keep a job. (Tr. at 170.) She usually quit due to anxiety. (Tr. at 178.) Plaintiff was discharged on February 1, 2000, exhibiting significantly improved mood. (Tr. at 156.)

Plaintiff reported to the Johnson-Ellis-Navarro MHMR on March 14, 2000. (Tr. at 294-95.) At that time Plaintiff reported no drug or alcohol abuse. (Tr. at 295.) She had begun working in a nursing home kitchen. *Id.* Plaintiff's insight and judgment were good and her medications were adjusted. *Id.* On April 25, 2000, Plaintiff complained of increased anxiety and her medication was adjusted. (Tr. at 293.) On June 6, 2000, Plaintiff reported depression and anxiety. (Tr. at 289.) She had lost the job at the nursing home and started another job. *Id.*

Plaintiff again sought treatment at Huguley Memorial Medical Center on May 10, 2000, for panic attacks. (Tr. at 228.)

A progress report from the Johnson-Ellis-Navarro MHMR, dated August 1, 2000, indicates diagnoses of bipolar disorder, polysubstance dependence, occupational problems, impairment in social, occupational, or school functioning, and impairment in reality testing or communication. (Tr. at 288.) On that date, papers for Plaintiff's disability application were filled out. *Id.* Plaintiff was working at a nursing home but had doubts about her ability to maintain employment. *Id.* She was also attending classes to attain her CNA license. *Id.*

At a visit on October 31, 2000, Plaintiff reported that her medication was not working. (Tr. at 284.) She felt depressed, irritable, and had memory problems. *Id.* She had quit three jobs in one

week. *Id.*

On January 1, 2001, Plaintiff reported that she had recently quit her job due to conflicts with her boss. (Tr. at 281.) She had a new job at a restaurant. *Id.* On February 20, 2001, Plaintiff had been sober for six months. (Tr. at 280.) She complained of sleepiness and problems with her weight. *Id.* She stated that she had gained forty to fifty pounds in the previous two years. (Tr. at 275.)

Donna J. Gowin, M.D. performed a consultative examination on March 21, 2001. (Tr. at 238-41.) Plaintiff reported a history of short-lived jobs. (Tr. at 238.) She reported having problems with her temper and anger control and quitting several jobs over mild confrontations. *Id.* At the time of the examination, Plaintiff had been sober for seven months. *Id.* Plaintiff stated that she liked to sleep a lot and would sometimes sleep all day. *Id.* She reported eating whether or not she was hungry and gaining fifty pounds in the previous few months. *Id.* Dr. Gowin found that Plaintiff exhibited anhedonia, felt helpless about her job situation, felt hopeless about her future, and admitted to suicidal ideations. *Id.* Plaintiff had difficulty with changes in her routine. *Id.* Plaintiff occasionally had poor concentration and complained of trouble with her remote memory. (Tr. at 239.) Plaintiff was able to drive, do her own shopping and housework, and take care of her personal hygiene. (Tr. at 239-40.) Dr. Gowin noted that Plaintiff's mood was irritable and her affect was flat. (Tr. at 240.) Plaintiff's insight was extremely limited, and her judgement and impulse control were limited. *Id.* Dr. Gowin diagnosed major depressive disorder and generalized anxiety disorder. *Id.* She assessed Plaintiff's GAF at 45-50. *Id.* Dr. Gowin found that Plaintiff "would need vigorous medication management for psychiatric problems, and management of her anxiety, as well as a lot of support and therapy and rehabilitation in order to maintain any prolonged length of sobriety and

ever return to the workforce." *Id.* Plaintiff's prognosis was "very guarded." *Id.*

At a visit to the Johnson-Ellis-Navarro MHMR on June 5, 2001, Plaintiff was not well-groomed. (Tr. at 267.) Plaintiff stated that she had been working at a convenience store for two and one-half months. (Tr. at 259.) She claimed that her job was causing her to have anxiety attacks, and that she felt her boss wanted to fire her. (Tr. at 267.) Plaintiff was compliant with her medications. *Id.*

On July 24, 2001, Plaintiff reported that she had attained her CNA certification and was working in a nursing home. (Tr. at 258.) By November 6, 2001, Plaintiff reported that she had lost her job and was looking for another. (Tr. at 255.) She was depressed and moody. *Id.* On December 18, 2001, Plaintiff stated that she was doing well on her medications and had obtained a job at a bar. (Tr. at 254.)

Another consultative examination was performed by Tara Reddy, M.D. on September 4, 2001. (Tr. at 249-52.) Plaintiff reported mood swings and racing thoughts since her school years. (Tr. at 249.) She also reported drug use for twenty years but had been sober for approximately one year at the time of the examination. *Id.* Plaintiff had difficulty sleeping at night and slept during the day. *Id.* She stated she had gained about seventy-five pounds in the previous two years. *Id.* Plaintiff exhibited some grandiosity, stating that she had "great memory" when, in fact, she performed poorly on memory tests. *Id.* Plaintiff stated that when she was depressed she didn't feel like getting out of bed, stayed to herself, experienced suicidal thoughts, and lacked energy. *Id.* Plaintiff reported recent hospitalization for suicidal thoughts. (Tr. at 250.) Plaintiff reported that her illness interfered with her social and occupational functioning. (Tr. at 249.) Plaintiff was able to cook, clean, do laundry, drive, shop, and handle her mail. *Id.* Plaintiff reported she was unable

to work because "I get too tired and I call in sick, I don't concentrate and I can't get along with people." (Tr. at 250.) Dr. Reddy found Plaintiff's mood to be dysphoric and her affect to be appropriate. *Id.* Plaintiff's remote memory was good, but her recent memory was impaired and her immediate recall was poor. *Id.* Plaintiff's concentration was fair, and her pace and persistence were slow. *Id.* Dr. Reddy diagnosed "Bipolar - mixed type 1 as manifested by both manic and depressive symptoms" and polysubstance dependence in early remission. (Tr. at 251.) Plaintiff's prognosis was guarded. *Id.* Dr. Reddy opined that Plaintiff might not be able to handle benefits in her best interest "because of alcohol and polysubstance dependence that is in early remission. *Id*

A non-examining State agency psychologist, Henry M. Hanna, Ph.D., provided an assessment of Plaintiff's work-related abilities on April 19, 2001. (Tr. at 312-25.) That report stated that in the category of affective disorders, Plaintiff had bipolar syndrome and major depressive disorder. (Tr. at 315.) In the category of personality disorders, Plaintiff exhibited cluster B traits. (Tr. at 319.) Plaintiff was also found to have polysubstance dependance in remission. (Tr. at 320.) In assessing Plaintiff's functional limitations, Dr. Hanna found that Plaintiff would have mild difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and one or two episodes of decompensation of extended duration. (Tr. at 322.) Dr. Hanna completed a Mental Residual Functional Capacity Assessment wherein he found Plaintiff to be moderately limited in the ability to maintain attention and concentration for extended periods; the ability to perform activities within a schedule, maintain regular attendance, and be punctual; the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace; the ability to accept instructions and respond appropriately to criticism from supervisors; and the ability to get along with coworkers without

distracting them. (Tr. at 304-05.) He found that Plaintiff retained the ability to understand and follow simple instructions, to adequately interact with coworkers and supervisors, and to adapt to routine working environments. (Tr. at 306.) Dr. Hanna noted that Plaintiff's symptoms were reasonably well-controlled and that her work ability was "restricted but not wholly compromised" by her functional limitations. (Tr. at 324.)

Another report was prepared on October 8, 2001, by a non-examining State agency physician, A. Boulos, M.D. (Tr. at 308-11, 326-39.) Dr. Boulos found Plaintiff to suffer from bipolar disorder - mixed and polysubstance dependence, in early remission. (Tr. at 329, 334.) He found Plaintiff to have moderate difficulties in maintaining social functioning and in maintaining concentration, persistence, or pace. (Tr. at 336.) Plaintiff was found to be moderately limited in her abilities to understand and remember detailed instructions; carry out detailed instructions; to maintain attention and concentration for extended periods; and interact appropriately with the general public. (Tr. at 308-09.) Dr. Boulos noted that Plaintiff exhibited decreased short term memory and decreased concentration. (Tr. at 338.) However, he stated that "the alleged limitations due to mental symptoms are not fully supported by the evidence of record." *Id.*

3.  Hearing Testimony

At the hearing on September 27, 2002, the ALJ heard testimony from Plaintiff and Shelly Eike, Vocational Expert ("VE"). (Tr. at 35-83.) Plaintiff was represented by counsel at the hearing. (Tr. at 37.)

Plaintiff testified that she completed seven years of school and was able to read. (Tr. at 48.) At the time of the hearing, Plaintiff was working approximately ten hours per week as a cook at a restaurant owned by a friend. (Tr. at 40, 60.) Plaintiff had worked there since November of the

previous year. *Id.* Plaintiff liked that she was in the kitchen by herself and that she could take frequent breaks. (Tr. at 59-60.)

Previously, Plaintiff had worked twenty-four to thirty hours a week as a CNA at a nursing home for three months. (Tr. at 38-39, 41-42.) Plaintiff was unable to keep a regular four-day schedule due to depression, so the nursing home quit calling her to work. (Tr. at 42.) Plaintiff had also worked as a waitress but quit due to the pressure. (Tr. at 49.) Plaintiff testified that she would try to work and support herself, but that she was unable to keep a job for any length of time. (Tr. at 61.)

Plaintiff's bipolar disorder was characterized by depressive episodes and manic episodes. (Tr. at 57-58.) Plaintiff had manic episodes every three to six months, lasting three to four days. (Tr. at 58.) Plaintiff testified that she was depressed the rest of the time, but became very depressed for a week or two immediately after coming off of a manic episode. (Tr. at 59.) Plaintiff took Tegretol and Paxil. (Tr. at 62.)

Plaintiff testified that five days a week she would sleep more that twelve hours. (Tr. at 54.) Despite sleeping so much, Plaintiff was fatigued. (Tr. at 55.) Plaintiff stated that performing household chores tired her. (Tr. at 42-43.) She shopped at night to avoid being around crowds. (Tr. at 51.) Plaintiff bathed and dressed only if she needed to leave the house. (Tr. at 55.) Plaintiff had no hobbies, other than caring for her animals. (Tr. at 56.) She had difficulty keeping track of her bills. *Id.* Plaintiff complained of gaining fifty-five to sixty pounds in the previous two years. (Tr. at 61.)

At the time of the hearing, Plaintiff had been sober for two years. (Tr. at 45.) She attended Alcoholics Anonymous meetings a few times a week. (Tr. at 52.) She spoke to her sponsor on the

phone but did not visit anyone. (Tr. at 47.)

The VE noted that most of Plaintiff's past jobs had been short-term. (Tr. at 64.) The VE testified that Plaintiff's previous work as a counter clerk at a cleaners was light, semi-skilled. (Tr. at 65.) When asked to respond to hypothetical questions which assumed an individual of Plaintiff's age, education, and work experience, who was limited to light work but not required to maintain fixed concentration and attention for periods longer than fifteen minutes without the opportunity to briefly come back to fixed attention, not required to understand, remember, or carry out more than simple instructions, and not required to have more than superficial interaction with coworkers or the public, the VE opined that such an individual could perform Plaintiff's past work as a hotel cleaner and counter clerk. (Tr. at 66.) In response to additional questioning by Plaintiff's attorney, the VE stated that an individual who could not regularly attend work or be punctual twenty-five percent of the time, who could not complete tasks in a timely manner twenty-five percent of the time, or who required more frequent and longer breaks than other employees would have difficulty maintaining employment. (Tr. at 79-81.) After reviewing Plaintiff's work history, the VE stated that it appeared Plaintiff was able to get work, but was not able to keep a job for any length of time. (Tr. at 82.)

### C.     ALJ's Findings

The ALJ issued his decision denying benefits on October 24, 2002. (Tr. at 16-24). In his findings, the ALJ stated that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of her symptoms. (Tr. at 20.) However, the ALJ did take Plaintiff's recent work activity into account in determining her RFC and her credibility. *Id.* Plaintiff was found to have a severe impairment, but the ALJ concluded that none of her impairments met or equaled the criteria of any of the listed impairments. *Id.* The ALJ noted that Plaintiff's mood had improved significantly since

she stopped using alcohol and that she had a history of missing mental health appointments. (Tr. at 22.) The ALJ also noted inconsistencies in Plaintiff's statements to the consultative examiners and her testimony at the hearing. *Id.* The ALJ concluded that Plaintiff's mental impairment "resulted in no restriction of activities of daily living, slight difficulties in maintaining social functioning, slight difficulties in maintaining concentration, persistence or pace, and no episodes of decompensation or deterioration." *Id.* The ALJ concluded that Plaintiff retained the residual functional capacity ("RFC") to perform light work with the following limitations: no requirement to balance, crawl, kneel, or climb more than occasionally; no requirement to walk for more than twenty minutes at a time without opportunity to rest; no requirement to stand more than twenty minutes at a time; no requirement to understand, remember, and carry out more than simple instructions; no requirement to maintain fixed concentration and attention for periods of longer than fifteen minutes without the opportunity to briefly refocus and come back to fixed concentration; and no requirement to have more than superficial interaction with coworkers or the public. (Tr. at 23.) Finding that Plaintiff's past work as a counter attendant did not require performance of work activities precluded by her medically determinable impairments, the ALJ concluded that Plaintiff could return to her past work. *Id.* Accordingly, the ALJ found that Plaintiff was not entitled to receive disability benefits. *Id.*

## II.  ANALYSIS

### A.  *Legal Standards*

#### 1.  *Standard of Review*

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner

applied proper legal standards in evaluating the evidence. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C. § 405(g), 1383(C)(3). Substantial evidence is defined as more than a scintilla, less than a preponderance, and as being such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). In applying the substantial evidence standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236. A finding of no substantial evidence is appropriate only if there is a conspicuous absence of credible evidentiary choices or contrary medical findings to support the Commissioner's decision. *Johnson v. Bowen*, 864 F.2d 340, 343-344 (5th Cir. 1988).

2. ***Disability Determination***

To be entitled to social security benefits, a claimant must prove that he or she is disabled as defined by the Social Security Act. *Leggett*, 67 F.3d at 563–64; *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988). The definition of disability under the Social Security Act is "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

The Commissioner utilizes a sequential five-step analysis to determine whether a claimant is disabled:

1. An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.

2. An individual who does not have a "severe impairment" will not be found to be

disabled.

3. An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors.

4. If an individual is capable of performing the work he has done in the past, a finding of "not disabled" must be made.

5. If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if work can be performed.

*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. § 404.1520(b)-(f)). Under the first four steps of the analysis, the burden lies with the claimant to prove disability. *Leggett*, 67 F.3d at 564. The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id.* Once the claimant satisfies his or her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant is capable of performing. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). A finding that a claimant is not disabled at any point in the five-step review is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

### B. *Issues for Review*

Plaintiff alleges that substantial evidence does not support the Commissioner's finding that she was not disabled because:

(1) The ALJ erred in finding that Plaintiff could perform work when he also found she could not maintain attention and concentration for periods of longer than fifteen minutes;

12

(2) The ALJ ignored the opinions of State agency physicians which placed greater limitations on her ability to work due to her mental impairment;

(3) The ALJ erred in failing to take into account Plaintiff's inability to maintain employment; and

(4) The ALJ erred in finding Plaintiff's testimony not credible or supported by objective medical evidence.

## C. Issue One: Attention and Concentration

Plaintiff asserts that the ALJ erred in finding that she could perform work because he also found that she "can only maintain attention and concentration for periods of fifteen minutes," which "would not comport with the abilities needed to perform any job." (Pl.'s Br. at 12.) In support of her argument, Plaintiff relies on the Commissioner's Program Operations Manual System ("POMS"),[3] which includes, in a subsection entitled "Mental Abilities Needed For Any Job," the requirement that an individual have "[t]he ability to maintain concentration and attention for extended periods (the approximately 2-hour segments between arrival and first break, lunch, second break, and departure)." (Appx. to Pl.'s Br. at 2.)

In setting forth Plaintiff's RFC, the ALJ limited Plaintiff to jobs with "no requirement to maintain fixed concentration and attention for periods of longer than 15 minutes without the opportunity to briefly refocus and come back to fixed concentration." (Tr. at 23.) The ALJ's finding that Plaintiff would need a brief moment to refocus after fifteen minutes of "fixed concentration" is not the same as a determination that Plaintiff could not maintain attention and concentration at all for more than fifteen minutes. Plaintiff has provided the Court with no support for her contention that the ALJ's RFC determination is inconsistent with the POMS. Indeed, the

---

[3] The POMS is the Commissioner's unpublished internal operating manual. *Cieutat v. Bowen*, 824 F.2d 348, 357 n.13 (5th Cir. 1987).

13

Court been unable to find further explanation, in agency rules or case law, of the degree of concentration or attention expected by the POMS.

Further, even assuming that the ALJ's assessment is inconsistent with the POMS, such an inconsistency does not in and of itself require reversal. "[T]he POMS is not binding law, because it is an unpublished policy statement." *Greenspan v. Shalala*, 38 F.3d 232, 239 (5th Cir. 1994) (citing *Schweiker v. Hansen*, 450 U.S. 785, 789-90 (1981)). Although the POMS may provide some useful insights, it has no legal force. *Hickman v. Bowen*, 803 F.2d 1377, 1381 n.6 (5th Cir. 1986).

For these reasons, the Court finds no error in the ALJ's finding that Plaintiff's need to periodically refocus while maintaining fixed concentration was not incompatible with the ability to perform work.

### D. *Issue Two: Weight Afforded State Agency Physicians*

Plaintiff claims the ALJ erred in ignoring the opinion of State agency physicians which placed greater limitations on Plaintiff's ability to work due to her mental impairment. (Pl.'s Br. at 13.)

Although ALJs "are not bound by any findings made by State agency medical or psychological consultants," they must consider such findings as opinion evidence. 20 C.F.R. §§ 404.1527(f)(2)(i), 416.927(f)(2)(i). An ALJ may not ignore the opinions of State agency medical consultants and must explain the weight given those opinions in their decisions. SSR 96-6p. However, even where the record demonstrates procedural improprieties, a court will not remand unless the substantial rights of a party have been affected. *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988). Remand is appropriate only if the improprieties would cast into doubt the existence of substantial evidence to support the ALJ's decision. *Id.*

14

In this case, the ALJ's decision does not reference Dr. Hanna's opinion that Plaintiff was moderately limited in the ability to maintain attention and concentration for extended periods; the ability to perform activities within a schedule, maintain regular attendance, and be punctual; the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace; the ability to accept instructions and respond appropriately to criticism from supervisors; and the ability to get along with coworkers without distracting them. (Tr. at 304-05.) Nor does it mention Dr. Boulos's opinion that Plaintiff was moderately limited in her abilities to understand and remember detailed instructions; carry out detailed instructions; to maintain attention and concentration for extended periods; and interact appropriately with the general public. (Tr. at 308-09.)

In contrast to the opinions of Dr. Hannah and Dr. Boulos, the ALJ concluded that Plaintiff's mental impairment "resulted in no restriction of activities of daily living, slight difficulties in maintaining social functioning, slight difficulties in maintaining concentration, persistence or pace, and no episodes of decompensation or deterioration." (Tr. at 22.) Based on the record, the court cannot determine whether the ALJ discounted the State agency medical consultants' opinions or merely overlooked them when assessing Plaintiff's mental RFC. Because the ALJ found Plaintiff to be less severely limited than the State agency medical consultants, the failure to reference their opinions with respect to Plaintiff's mental residual functional capacity was erroneous.

Such error does not require remand if Plaintiff was not prejudiced, however. *Morris*, 864 F.2d at 335. Plaintiff claims that she was prejudiced by the failure to include the State agency physicians' limitations in her RFC because the VE's testimony indicated that had those limitations been before the VE, she would have testified that Plaintiff could not perform either her past work

15

or other work in the national economy. (Pl. Br. at 14.) The VE did testify that an individual with a combination of the limitations set forth in the opinions of the State agency physicians would have difficulty retaining employment. (Tr. at 76-81.) Based on this testimony, the failure to reference the opinions of the State agency physicians casts doubt on the existence of substantial evidence to support the ALJ's decision regarding the effect of Plaintiff's mental RFC on her ability to work. *Morris*, 864 F.2d at 335.

On the other hand, the Commissioner asserts that there was no prejudice because there is no indication that the definition of "moderate" used by Plaintiff's counsel in questioning the VE was the same definition as that used by the State agency physicians. (Def.'s Resp. at 5.) Additionally, the Commissioner asserts that had later adduced evidence been before the State agency physicians, they would likely have revised their findings. (Def.'s Resp. at 5-6.)

A reviewing court may affirm the Commissioner's decision only on the grounds stated in support of the decision. *Cole v. Barnhart*, 288 F.3d 149, 151 (5th Cir. 2002). This Court cannot presume to know how the ALJ will reassess Plaintiff's mental RFC on remand or whether the revised RFC will elicit testimony from the VE that Plaintiff can perform her past work as a counter attendant. Nor can it know how subsequent evidence might have changed the findings of the State agency physicians. Because the ALJ erred in failing to reference the opinions of the State agency medical consultants, and because such error casts doubt on the existence of substantial evidence to support the ALJ's determination at step four that Plaintiff's mental RFC did not restrict her ability to perform her past work, the Court cannot conclude that substantial evidence supports the ALJ's determination. Therefore, the Court finds that remand is required to allow the Commissioner to make a new determination as to Plaintiff's mental RFC.

E.   *Issue Three: Ability to Maintain Employment*

Plaintiff claims that the ALJ erred in failing to take into account Plaintiff's inability to maintain employment. (Pl.'s Br. at 14.)

"A finding that a claimant is able to engage in substantial gainful activity requires more than a simple determination that the claimant can find employment and that he can physically perform certain jobs; it also requires a determination that the claimant can hold whatever job he finds for a significant period of time." *Singletary v. Bowen*, 798 F.2d 818, 822 (5th Cir. 1986). Ordinarily, whether a plaintiff can maintain employment for a significant period of time will be included in the analysis of her ability to obtain employment. *Frank v. Barnhart*, 326 F.3d 618, 619 (5th Cir. 2003). However, under certain circumstances, separate consideration of a plaintiff's ability to maintain employment is required. *Id.*

In this case, the record is replete with evidence that, while Plaintiff was able to obtain employment, she rarely kept a job for long. While hospitalized for suicidal ideation and substance abuse, Plaintiff reported she had held "plenty" of jobs in the previous five years but could not keep a job. (Tr. at 170.) Plaintiff had recently obtained a job on March 14, 2000, but by June 6, 2000, she had lost that job and started another. (Tr. at 295, 289.) On October 31, 2000, Plaintiff reported having quit three jobs in one week. (Tr. at 284.) On January 1, 2001, Plaintiff reported having recently quit a job and obtaining a new one at a restaurant. (Tr. at 280.) Plaintiff was working at a convenience store on June 5, 2001. (Tr. at 259.) On July 24, 2001, Plaintiff was working at a nursing home. (Tr. at 258.) She had lost that job by November 6, 2001. (Tr. at 255.) By December 18, 2001, Plaintiff had a new job at a bar. (Tr. at 254.) At the hearing, Plaintiff reported that she had been working ten hours a week at a restaurant owned by a friend for the previous nine months.

17

(Tr. at 40, 60.) Additionally, at the hearing, the ALJ had difficulty identifying jobs that Plaintiff had worked long enough to qualify as past relevant work. (Tr. at 69-74.)

Given the foregoing factual scenario, a separate finding by the ALJ regarding the ability to maintain employment is required. *See Singletary*, 798 F.2d at 823. Accordingly, remand is required to allow the Commissioner to make a determination as to Plaintiff's ability to maintain employment.

## F.   Issue Four: Credibility Determination

Plaintiff asserts that the ALJ failed to properly evaluate her credibility, and that the medical record supports her subjective complaints. (Pl.'s Br. at 15.)

"Credibility determinations are generally the province of the ALJ and are entitled to deference." *Lam v. Apfel*, 2000 WL 354393, *4 (N.D. Tex. Apr. 5, 2000). Therefore, courts will reverse an ALJ's credibility determination only if it is "patently wrong." *Jens v. Barnhart*, 347 F.3d 209, 213 (7th Cir. 2003). The ALJ's "determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p. "If on [42 U.S.C.] § 405(g) review the court finds that the ALJ followed the proper procedures and considered the relevant factors, the ALJ's determination is ordinarily conclusive." *Lechner v. Barnhart*, 321 F. Supp. 2d 1015, 1027 (E.D. Wis. 2004).

In this case, the ALJ provided specific reasons for his credibility determination. Concerning Plaintiff's weight gain, the ALJ noted that although she testified she had gained almost sixty pounds in the previous two years, the medical evidence did not support her claim. (Tr. at 22.) With respect to the limitations due to bipolar disorder, the ALJ stated: "the medical evidence shows, and the

18

claimant admitted at the hearing, that the claimant's mood has improved significantly since she ceased drinking alcohol. It is clear that the claimant is not as concerned about her mental problems since she had a history of missing appointments." *Id.* The ALJ also noted discrepancies in Plaintiff's statements to the consultative examiners. *Id.*

Plaintiff does not claim that the ALJ failed to consider the factors pertinent to a credibility determination. Rather, Plaintiff points to other evidence in the record which she asserts supports her subjective complaints. (Pl.'s Br. at 15.) Because of the deference to be accorded to the ALJ's credibility determination, and because the ALJ did specify the reasons for his finding, the Court concludes that substantial evidence supports the ALJ's credibility determination.

### III. CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that the final decision of the Commissioner be **REVERSED** and that the case be **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings. Furthermore, on remand, the Commissioner should begin her disability analysis at step four of the sequential five-step disability inquiry. Specifically, the Commissioner should be instructed to reassess Plaintiff's RFC in light the mental limitations recognized by the ALJ and state the weight accorded to the State agency physicians' opinions. If the Commissioner concludes that Plaintiff's nonexertional impairments significantly affect her RFC, the issue of whether Plaintiff was able to return to her past work as a counter attendant should be revisited. Additionally, the Commissioner should make a specific determination as to Plaintiff's ability to maintain employment.

**SO RECOMMENDED**, on this **27th** day of September, 2005.

*[signature]*
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must file and serve written objections within ten (10) days after being served with a copy. A party filing objections must specifically identify those findings, conclusions or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory or general objections. A party's failure to file such written objections to these proposed findings, conclusions and recommendation shall bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985); *Perales v. Casillas*, 950 F.2d 1066, 1070 (5th Cir. 1992). Additionally, any failure to file written objections to the proposed findings, conclusions and recommendation within ten (10) days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

*[signature]*
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE